762 So.2d 507 (2000)
STATE of Florida, Petitioner,
v.
John WARNER, Respondent.
No. SC94842.
Supreme Court of Florida.
June 22, 2000.
*508 Robert A. Butterworth, Attorney General, Celia A. Terenzio, Bureau Chief, Myra J. Fried, and Joseph A. Tringali, Assistant Attorneys General, West Palm Beach, FL, for petitioner.
Richard L. Jorandby, Public Defender, Susan D. Cline, and David J. McPherrin, Assistant Public Defenders, Fifteenth Judicial Circuit, West Palm Beach, FL, for respondent.
LEWIS, J.
We have for review State v. Warner, 721 So.2d 767 (Fla. 4th DCA 1998) ("Warner"), which expressly and directly conflicts with the Fifth District's en banc opinion in State v. Gitto, 731 So.2d 686 (Fla. 5th DCA 1998), review denied, 728 So.2d 204 (Fla.1998), and review denied, 728 So.2d 202 (Fla.1998)("Gitto"). In Warner, the Fourth District heldcontrary to the holding in Gitto[1]that a sentence *509 is not per se invalid where the trial court, over the State's objection, advises a defendant regarding what sentence would be imposed pursuant to a plea of guilty, and accepts the defendant's subsequent guilty plea.[2] This Court has jurisdiction. See Art. V, § 3(b)(3), Fla. Const.
The respondent, Warner, was charged by information with one felony and two misdemeanors involving alcohol-related driving offenses. The trial court ordered a pre-plea presentence investigation ("PSI"). At a hearing on July 10, 1997, the Assistant State Attorney indicated to the court that the State would like to review the PSI, and leave the matter on "for the trial datemost likely for a change of plea." Respondent's counsel stated, "You offered us an open plea, possibly. They want to get the victim's input and the background on the family. We did a pre-plea PSI. I agree with the State that we should review this." The court indicated "We'll leave it on for the 21st (of July)." Respondent's counsel responded, "Then we'll plea it out."
At the subsequent hearing on July 21, respondent's counsel made the following statement:
The Court at sidebar the other day warned us what the Court would consider for plea, and we would like to go forward with it.
It was two years house arrest. Special condition of house arrest 364 days in Broward County Jail. Followed by three years of probation.
The State agreed that this statement accurately reflected the trial court's representation regarding the sentence to be imposed pursuant to Warner's guilty plea. After accepting Warner's plea, the trial court sentenced him as indicated, over the State's objection that the trial court, in imposing the downward departure sentence (based upon proffered information, rather than actual evidence), relied on grounds which were either invalid or not supported by record evidence.
The State then appealed. The Fourth District reversed, finding one of the three stated departure reasons to be invalid, and the other two to be lacking record support. See 721 So.2d at 769. In so doing, however, the appellate court first rejected the State's contention that the sentence was invalid in the first instance because the trial court, over the State's objection, had violated the separation of powers doctrine by making a pre-plea sentencing pronouncement, and thereafter accepting Warner's guilty plea:
We ... respectfully disagree with Gitto to the extent that it holds that a court can never, over the state's objection, advise a defendant of the sentence it would impose if the defendant pleads guilty to the charges filed by the state. Our holding is limited to cases in which the plea is to the charge determined by the prosecutor. The court cannot, over the state's objection, reduce the charge and accept a plea to the reduced charge. We note that Florida Rules of Criminal Procedure 3.170(h) requires the state's consent to a plea to lesser charges; however, rule 3.170 is silent on whether the state must consent where the plea is to the charges.
721 So.2d at 769 (footnote omitted).
The topic addressed by this petition for discretionary review is not new. Over two decades ago, this Court, in Davis v. State, 308 So.2d 27 (Fla.1975), touched upon the role of the trial judge in the plea bargaining process:
As observed in [Brown v. State, 245 So.2d 41, 44 (Fla.1971)], we are well aware of the changing attitudes of those concerned with criminal justice on the *510 question of "plea bargaining." This change is reflected in the new rule relating to Plea Discussions and Agreements, which rule finds its genesis in Sections 3.1-3.4, incl., ABA Standards Relating To Pleas of Guilty (1968). As we stated in Brown, supra, a judge is never bound in sentencing by the negotiations which occur between the prosecuting attorney and the defense counsel. Furthermore, it is true that plea discussions in which the trial judge is involved have been categorized as "delicate" and that the American Bar Association in its Standards for Criminal Justice Relating to Guilty Pleas has concluded that the trial judge should not participate in such plea discussions until after a tentative plea agreement has been entered into between counsel for the parties. Nevertheless, we refrain from condemning the practice per se since we are confident that the trial judges of this state will take all necessary precautions to assure that defendants' rights are protected by appropriate safeguards. Should a trial judge later decide that a sentence should not be as lenient as he had contemplated earlier, he must be liberal in permitting a withdrawal of the guilty plea.
308 So.2d at 29 (footnotes omitted).[3] While we expressed, in Davis, our trust that the trial judges of this state, when involved in the plea bargaining process, "will take all necessary precautions to assure that defendants' rights are protected by appropriate safeguards," the present controversy has distilled the apparent need to delineate certain minimum safeguards (not otherwise specified in rule 3.171(d),[4] Florida Rules of Criminal Procedure) which will, in the future, apply to such participation. As observed by Justice Sanders in State v. Wakefield, 130 Wash.2d 464, 925 P.2d 183, n. 1 (1996) (Sanders, J., concurring in part, dissenting in part), "[p]articipation by a judge in plea negotiations, while disfavored and rare, is not unheard of." Not surprisingly, the extent to which a trial court may, or should, interject itself into the plea bargaining arena has been the subject of spirited debate. Such participationwhether condemned[5] or *511 condoned[6]has always been approached with caution.
Many of the concerns repeatedly expressed (such as the defendant's perception of coercion, the defendant's fear of reprisal if a plea offer is rejected, the undermined use of presentence investigation reports and victim input, the illusory nature of a bargained-for sentence, and where the bartered-for sentence will not be imposedthe potential "discrediting" of a subsequent assertion of innocence upon withdrawal of the guilty plea) are inherent in the plea bargaining model itself, but may be magnified when the powerful "neutral" in the system becomes embroiled in the negotiation process. Cf. People v. Jensen, 4 Cal.App.4th 978, 983-984, 6 Cal. Rptr.2d 201 (1992)(outlining concerns involved when trial court participates in plea bargaining); see generally Robert M. Sussman, Note, Restructuring the Plea Bargain, 82 Yale L.J. 286, 287 (observing that "[j]udicial participation in the process at least before the defendant tenders his pleahas been viewed with nearly universal distaste"); Peter A. Whitman, Recent Developments, Judicial Plea Bargaining, 19 Stan.L.Rev. 1082 (1967) (analyzing criticisms of judicial plea bargaining). Other concerns (such as a perception that the trial court will be unable to rule fairly on the voluntariness of a bargain it has helped to induce, or a perception of "unseemliness" potentially evoked by judicial plea bargaining) appear to be unique to judicial involvement beyond that contemplated by rule 3.171, Florida Rules of Criminal Procedure.
In certain jurisdictions, this has lead to an express prohibition of judicial plea bargaining. Rule 11(e), Federal Rules of Criminal Procedure ("Plea Agreement Procedure"), provides:
(1) In General. The attorney for the government and the attorney for the defendant or the defendant when acting pro se may engage in discussions with a view toward reaching an agreement that, upon the entering of a plea of guilty or nolo contendere to a charged offense or to a lesser or related offense, the attorney for the government will do any of the following:
(A) move for dismissal of other charges; or
(B) make a recommendation, or agree not to oppose the defendant's request, for a particular sentence, with the understanding that such recommendation *512 or request shall not be binding upon the court; or
(C) agree that a specific sentence is the appropriate disposition of the case.

The court shall not participate in any such discussions.
(Emphasis supplied.) Similarly, the ABA's plea bargain standardwhile not containing an outright proscription against judicial participationprovides that the judge "should not ordinarily participate in plea negotiation discussions among the parties." ABA Standards for Criminal Justice: Pleas of Guilty, Standard 14-3.3(d) (3d ed.1999) (discussing responsibility of judges). Under the ABA standard, at the request of the parties, "a judge may be presented with a proposed plea agreement negotiated by the parties and may indicate whether the court would accept the terms as proposed and, if relevant, indicate what sentence would be imposed." Id.
As one commentator has explained, this is a change from earlier versions of the ABA standard, which originally provided that "[t]he trial judge should not participate in plea discussions." Standards Relating to Pleas of Guilty § 3.3(a) (Supp. 1968). Later (in the second edition), the standard provided:
When the parties are unable to reach a plea agreement, if the defendant's counsel and prosecutor agree, they may request to meet with the judge in order to discuss a plea agreement. If the judge agrees to meet with the parties, the judge shall serve as a moderator in listening to their respective presentations concerning appropriate charge or sentence concessions. Following the presentation of the parties, the judge may indicate what charge or sentence concessions would be acceptable or whether the judge wishes to have a pre-plea report before rendering a decision. The parties may thereupon decide among themselves, outside the presence of the court whether to accept or reject the plea agreement tendered by the court.
ABA Standards for Criminal Justice, Standard 14-3.3(c)(2d ed.1980).
Thereafter, "[i]n the recently approved third edition of the Standards Relating to Criminal Justice ... the American Bar Association eliminated its earlier references to the judge's role as a participant in the plea negotiation process. In its place, the drafters substituted language which limits a judge's authority in plea bargaining." Peter W. Agnes, Jr., Some Observations and Suggestions Regarding the Settlement Activities of Massachusetts Trial Judges, 31 Suffolk U.L.Rev. 263, 305 (1997) (footnote omitted). Specifically, the current standard provides:
A judge should not ordinarily participate in plea negotiation discussions among the parties. Upon the request of the parties, a judge may be presented with a proposed plea agreement negotiated by the parties and may indicate whether the court would accept the terms as proposed and, if relevant, indicate what sentence would be imposed. Discussions relating to plea negotiations at which the judge is present need not be recorded verbatim, so long as an appropriate record is made at the earliest opportunity. For good cause, the judge may order the record or transcript of any such discussions to be sealed.
ABA Standards: Pleas of Guilty, Standard 14.3.3(d) (3d ed.1999).
However, just as the concerns prompting a limitation on judicial involvement in plea bargaining are not insubstantial, there have been certain significant advantages identified with active judicial participation. At least one commentator has posited that "[t]he principles of separation of powers, accountability in government and impartiality in judicial administration are inconsistent with the extensive delegation of judicial power to prosecutors that today's guilty plea system has wrought," suggesting that judicial plea bargaining "would restore judicial [sentencing] power to the judges ." Albert W. Alschuler, The Trial Judge's Role in Plea Bargaining, 76 Colum.L.Rev. *513 1060, 1129 (1976). In comparing active judicial involvement with "ratification" or "plea withdrawal" procedures, other identified advantages are directness (it provides a firm basis for reliance on a plea); simplicity (it involves a single step); decorum (it provides a formal courtroom atmosphere, as contrasted with the informality of the current process); and procedural uniformity (it provides a forum for the implementation of uniform safeguards). Id. at 1129-36.
Thus, despite the legitimate public policy concerns which have prompted the federal system and at least six states (Alaska,[7] Pennsylvania,[8] Texas,[9] Utah,[10] West Virginia,[11] and Wisconsin[12]) to disallow judicial participation in plea bargaining, there are others which have limited, rather than entirely proscribed, such involvement. In People v. Cobbs, 443 Mich. 276, 505 N.W.2d 208 (1993), for example, the Michigan Supreme Court modified its prior rule, which had prohibited judicial participation in plea bargaining, to permit the judge, at his or her discretionbut only in response to the request of a party, and not on the judge's own initiativeto state on the record the length of sentence which, on the basis of the information then available to the judge, appears to be appropriate for the charged offense. In thus modifying Michigan's judicial participation rule, the Cobbs court stressed that "the judge's final sentencing decision must await receipt of all the necessary information [such as victim input and additional prosecutorial information]" and that "a decision not to sentence a defendant in conformance with a preliminary evaluation is not an automatic basis for recusal." Id. at 212-13.
Because we find that the Michigan rule aptly accommodates the competing interests involved, we pattern the safeguards adopted here on that model. Consistent with Davis, we do not proscribe judicial participation in the plea bargaining process; however, judicial involvement must be limited "to minimize the potential coercive effect on the defendant, to retain the function of the judge as a neutral arbiter, and to preserve the public perception of the judge as an impartial dispenser of justice." Cobbs, 505 N.W.2d at 212 (quoting People v. Killebrew, 416 Mich. 189, 330 N.W.2d 834, 839 (1982)). The trial court must not initiate a plea dialogue; rather, at its discretion, it may (but is not required to) participate in such discussions upon request of a party.
*514 Once involved, the court may actively discuss potential sentences and comment on proposed plea agreements. The court may consider pre-plea victim input and a pre-plea presentence investigation report prior to suggesting any sentence; however, if victim input will not be received until a later time, the judge must make it clear on the record that the court is required to and will consider any victim input which is offered pursuant to section 921.143, Florida Statutes,[13] prior to making a final determination regarding an appropriate sentence. Cf. Gitto, 731 So.2d at 692 (observing that due process requires victim input to be provided at a meaningful time and opining that "[i]t is not a meaningful time to hear the victim after the court has pre-determined the sentence in order to get a plea agreement"). Consideration of such pre-plea input will not limit the prosecutor's right to introduce additional facts at appropriate points, nor preclude the court's later consideration of presentence victim input which it is required to consider, a presentence investigation report, or other applicable sources of information prior to sentence imposition.
The judge may state on the record the length of sentence which, on the basis of information then available to the judge, appears to be appropriate for the charged offense. As observed in Cobbs, "[t]he judge's neutral and impartial role is enhanced when a judge provides a clear statement of information that is helpful to the parties." 505 N.W.2d at 212. The question for the court's consideration is: "Knowing what you know today, what do you think the sentence would be if the defendant pled guilty, as charged?" Id. If the prosecutor offers to reduce the charge in exchange for a plea of guilty or nolo contendere, the judge may also state on the record the sentence which appears to be appropriate for the reduced charge.
A judge's preliminary evaluation of the case is not binding, since additional facts may emerge prior to sentencing which properly inform the judge's sentencing discretion. If the judge later determines that the sentence to be imposed must exceed the preliminary evaluation, then the defendant who has pleaded guilty or nolo contendere in reliance upon the judge's preliminary sentencing evaluation has an absolute right to withdraw the plea. However, a defendant who pleads guilty with knowledge of the sentence which is imposed agrees that the sentence is proportionate to both the offense and the offender.
To avoid the potential for coercion, a judge must neither state nor imply alternative sentencing possibilities which hinge upon future procedural choices, such as the exercise of a defendant's right to trial. A record must be made of all plea discussions involving the court.
If a plea is either not entered into or withdrawn, the judge who participated in the plea bargaining process will not automatically be subject to recusal in the case. As stated in Cobbs, "[a] judge's candid statement of how a case appears at an early stage of the proceedings does not prevent the judge from deciding the case in a fair and evenhanded manner later, when additional facts become known." 505 N.W.2d at 212.
Although the safeguards delineated here apply in those cases where a trial court agrees to be an active participant in plea bargaining discussions, the court may decline to assume such a role. This decision *515 is left to the broad discretion of the trial judge, and may be premised upon the circumstances of a particular case or the judge's overall preference. Based upon the foregoing, we approve Warner to the extent not inconsistent with this opinion,[14] and disapprove Gitto to the extent that its reasoning is contrary to the views expressed herein.
It is so ordered.
HARDING, C.J., and SHAW, WELLS, ANSTEAD, PARIENTE and LEWIS, JJ., concur.
QUINCE, J., concurs in result only.
NOTES
[1] The Gitto court held that the trial court's acceptance of a plea over the prosecutor's objection is clear error which requires outright reversal of any sentence entered in reliance on such a plea. 731 So.2d at 691. In Warner, the Fourth District refused to reverse the trial court's order on the ground that the court had suggested the sentence which it would impose in response to a plea to the charges, and then, over the state's objection, had imposed that sentence when the defendant later entered a guilty plea. In so doing, the Warner court "respectfully disagree[d]" with Gitto "to the extent that it holds that a court can never, over the state's objection, advise a defendant of the sentence it would impose if the defendant pleads guilty to the charges filed by the state." Warner, 721 So.2d at 769. The Warner court did agree, however, "with that portion of Gitto which holds that when the state is not a party to a plea agreement, the agreement itself cannot serve as a basis for a downward departure from the sentencing guidelines." Id. n. 2.
[2] Although the Warner court rejected the State's argument that Warner's plea and departure sentence were invalid because of this alleged irregularity, it still reversed the trial court's order because it found that the departure sentence was not supported by the record.
[3] The Gitto court, on motion for rehearing, interpreted the quoted passage as being consistent with the current ABA standard:

When the supreme court in Davis said "we refrain from condemning the practice per se," we do not believe the court intended to authorize a direct and exclusive agreement between the court and the defendant. We believe instead that it was contemplating the present position of the American Bar Association, which is that the judge, with the consent of both parties, can participate in the sentence discussions to the extent that he or she can indicate what sentence would be acceptable or what concessions would be required. But whether an agreement should be reached on the judge's terms would rest exclusively with the parties. If the parties acquiesce to the judges's terms, then it might be referred to as the judge's agreement when, in effect, it is the parties' agreement pre-approved by the court.
Gitto, 731 So.2d at 693 n. 1.
[4] Rule 3.171(d) provides:

After an agreement on a plea has been reached, the trial judge may have made known to him or her the agreement and reasons therefor prior to the acceptance of the plea. Thereafter, the judge shall advise the parties whether other factors (unknown at the time) may make his or her concurrence impossible.
[5] See Fed.R.Crim.P. 11(e)(1) (providing that "the court shall not participate in any [plea bargaining] discussions); W. Va. R.Crim. P. 11(e)(same). Cf. Gitto, 731 So.2d at 692 (disallowing judicial plea bargaining, but distinguishing "the practice of the trial judge expressing general sentencing policies that may help inform a plea agreement between the state and a defendant or which may influence the unilateral decision by defendant to offer a guilty plea," which, "[i]f done carefully ... is not objectionable"); People v. Jensen, 4 Cal. App.4th 978, 6 Cal.Rptr.2d 201, 204 (1992) (observingin disapproving the trial court's material alteration of a plea bargain struck by the State and the defendant without permitting the defendant to withdraw his plea-that the California Supreme Court had written that "[t]he process of plea bargaining which has received statutory and judicial authorization... contemplates an agreement negotiated by the People and the defendant and approved by the court," and that, as another court had explained, because "[e]xperience suggests that [judicial participation in plea bargaining] risks more, in terms of unintentional coercion of defendants, than it gains in promoting understanding and voluntary pleas... most authorities recommend that it be kept to a minimum"); Safford v. Warden, 223 Conn. 180, 612 A.2d 1161, 1169-1174 (1992) (Berdon, J., concurring in result) (disapproving judicial participation in plea bargaining); Melby v. State, 70 Wis.2d 368, 234 N.W.2d 634, 643 (1975) (observing that the Wisconsin Supreme Court had "made it clear that trial courts are not to participate in plea bargains"); see generally Wanda Ellen Wakefield, Annotation, Judge's Participation in Plea Bargaining Negotiations as Rendering Accused's Guilty Plea Involuntary, 10 A.L.R.4th 689 (1981).
[6] See Ill.S.Ct.R. 402(d) ("Plea Discussions and Agreements") (providing for judicial participation in plea bargaining, but prohibiting the judge from initiating plea discussions and requiring the judge to recuse himself in the event that a guilty plea is withdrawn). See also State v. Niblack, 220 Conn. 270, 596 A.2d 407 (1991) (approving procedure followed in reaching a plea agreement where "[t]he judge was responsible for conducting plea negotiations and, if an agreement was reached, for holding a plea and sentencing hearing [ ... but if] negotiations were not successful ... a judge who was not involved in the plea negotiations would have presided at trial and pronounced sentence if the defendant were found guilty"); People v. Cobbs, 443 Mich. 276, 505 N.W.2d 208 (1993)(modifying rules governing judicial participation in sentence discussions, which had previously prohibited trial judges from initiating or participating in discussions aimed at reaching plea agreements, to allow a judge, at his or her discretionbut only in response to the request of a party, and not on the judge's own initiativeto state on the record the length of sentence that, on the basis of the information then available to the judge, appears to be appropriate for the charged offense).
[7] See State v. Buckalew, 561 P.2d 289, 290-91 (Alaska 1977).
[8] See Commonwealth v. Evans, 434 Pa. 52, 252 A.2d 689, 691 (1969) (expressing the view that "we feel compelled to forbid any participation by the trial judge in the plea bargaining prior to the offering of a guilty plea").
[9] See Ex parte Spicuzza, 903 S.W.2d 381, 384 (Tex.App.1995) (observing that, "although Texas trial judges are not expressly prohibited by law from participating in a plea bargaining session, the Court of Criminal Appeals has suggested that `a trial judge should not participate in any plea bargain agreement discussions until an agreement has been reached between the prosecutor and the defendant'")
[10] See State v. Hoff, 814 P.2d 1119 (Utah 1991) (observing that, although a harmless error standard applies to an appellate court's review of the trial court's procedure in accepting a guilty plea, pursuant to State v. Gibbons, 740 P.2d 1309 (Utah 1987), trial courts must still strictly comply with the requirements of Rule 11(5), which is closely patterned after Rule 11 of the Federal Rules of Criminal Procedure).
[11] See W.Va.R.Crim.P. 11(e)(providing that the court shall not participate in any plea bargaining discussions).
[12] See In re Amendment of Rules of Civil & Criminal Procedure, 128 Wis.2d 422, 383 N.W.2d 496, 498 (1986) (determiningafter first referring proposed modification of rule of criminal procedure governing plea agreements to Judicial Conference of Wisconsin, and conducting survey of Wisconsin trial judges with respect to their experience with plea agreements and their views regarding the proposed rulethat proposed modification to rules of civil and criminal procedure should be rejected on the basis of established norm that "[a] trial judge should not participate in plea bargaining").
[13] See § 921.143(1), Fla.Stat. (1999)(providing that "[a]t the sentencing hearing, and prior to the imposition of sentence upon any defendant who has been convicted of any felony or who had pleaded guilty or nolo contendere to any crime ... the sentencing court shall permit the victim of the crime for which the defendant is being sentenced, or the next of kin of the victim if the victim has died from causes related to the crime, to: (a) Appear before the sentencing court for the purpose of making a statement under oath for the record; and (b) Submit a written statement under oath to the office of the state attorney, which statement shall be filed with the sentencing court").
[14] The record does not reflect who initiated the sidebar plea bargaining dialogue in Warner; however, the Fourth District reversed and remanded for resentencing in that case, not because the trial court had actively participated in the plea process, but because the record reflected insufficient bases for the departure sentence imposed. In appeals based upon claims of improper judicial participation in the plea bargaining process, a harmless error analysis will apply. See State v. DiGuilio, 491 So.2d 1129 (Fla.1986); § 924.051, Fla.Stat. (1997).